```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA        )
                                )  No. 1:06-cr-223-RBW
        v.                      )
                                )
DIMAS HERNANDEZ-BENITEZ         )
```

Government's Memorandum In Aid Of Sentencing

The United States of America, by and through the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing in the matter captioned above.

Background

On August 15, 2005, defendant Dimas Hernandez-Benitez was arrested by agents of the Bureau of Immigration and Customs Enforcement (ICE), on suspicion of having entered or remained in the United States unlawfully.  On August 18, 2005, he was released on a $5000 bond, pending an immigration hearing.  On October 13, 2005, the defendant failed to appear for the hearing.

On October 26, 2005, the defendant was arrested on a robbery complaint, by officers of the Metropolitan Police Department. ICE was notified of the arrest and lodged an immigration detainer with the U.S. Marshal's Service.  When the defendant was released on personal recognizance in the robbery matter (U.S. v. Dimas Hernandez-Benitez, 2005-FEL-6193 (D.C. Super. Ct.)) later that same day, he was taken into ICE custody, and held until being deported to El Salvador, via Washington Dulles International Airport, on December 12, 2005.

Prior to being deported, the defendant was specifically warned he could not re-enter the United States, without permission of the U.S. Attorney General, for a period of 10 years.  He was also warned that 8 U.S.C. § 1326 made it a crime for an alien removed from the United States to re-enter without the Attorney General's permission.

In light of his deportation, the government dismissed the robbery complaint against him, on January 25, 2006.

On May 31, 2006, at approximately 10:15 p.m., Metropolitan Police Department officers arrested the defendant in the 2400 block of Fourteenth Street, N.W., Washington, D.C., on a bench warrant from the robbery case.  The warrant had been issued on November 10, 2005, when the defendant failed to appear for his preliminary hearing (because he was in ICE custody) and should have been quashed when the robbery case was subsequently dismissed following the defendant's deportation.  In light of his re-capture, however, another ICE immigration detainer was lodged against the defendant on June 1, 2006.

On June 2, 2006, after the Superior Court matter was resolved, the defendant was once again taken into custody by ICE agents.  After being advised of and waiving his rights, he was once again interviewed.  During the interview, he acknowledged that he was a citizen of El Salvador, that he had been deported from the United States, that he had illegally re-entered the

United States around April 12, 2006, near Brownsville, Texas, and that his current status in the United States was "illegal." He also acknowledged that he had a "fake resident alien card" in the name of Andres Hernandez, but the card was not in his immediate possession.

In addition, the defendant admitted to the agents that he had previously been a member of "La Mara R," a violent street gang active in the D.C. area and composed of boys and young men from El Salvador.  The defendant stated he joined the gang about two years earlier, through an initiation proceeding where he was "jumped," i.e., assaulted, by five gang members for about 13 seconds.

Following this statement, on June 2, 2006, the defendant was ordered administratively detained, by the authority of the ICE Special Agent-in-Charge, Washington Field Office, pending the defendant's anticipated (re-)deportation.

On July 12, 2006, an ICE agent obtained a warrant for the defendant's arrest on a complaint charging him with unlawful re-entry, which warrant was executed that same day.  Following his initial appearance on the same date, he was ordered held without bond by Magistrate Judge Alan Kay.

On August 16, 2006, the defendant waived indictment and pled guilty to this Court, pursuant to a plea agreement, to a one-count information charging him with illegally re-entering the

United States, after being deported.  He was once again ordered held without bond.

<u>The Plea Agreement And The Statutory and Guideline Sentences</u>

Pursuant to 8 U.S.C. § 1326 and 18 U.S.C. § 3571, the defendant faces a maximum prison term of two years and a maximum fine of $250,000.  Pursuant to 18 U.S.C. §§ 3559 and 3853, he also faces a maximum period of supervised release of one year following any term of imprisonment.  In addition, pursuant to 18 U.S.C. §§ 3559 and 3561, the defendant may be placed on probation for a period of one to five years.

Under the Sentencing Guidelines, the defendant faces a guideline term of imprisonment of zero to six months, and a guideline fine range of $500 to $5000.  He is also eligible, under the Guidelines, for a probationary sentence of one to five years.

Pursuant to the plea agreement, the government has agreed not to oppose a sentence at the low end of the applicable guideline range.  Accordingly, the government is only seeking a probationary sentence for this defendant.  The government does, however, recommend a special term of probation.  Specifically, as a term of his probation, the defendant, <u>if</u> deported or removed from the United States by ICE, should be prohibited from returning to the United States for any reason, for the term of

his probation.  The term of the defendant's probation should be five years, in order to achieve the maximum deterrent effect.[1]

The government submits that this special probationary condition and the five-year probationary term are merited in light of certain circumstances of this offense, and the nature and character of the defendant.  See 18 U.S.C. §§ 3553(a)(1), 3562.  In particular, the defendant's failure to appear for his October 2005 immigration hearing and his prompt and unlawful return to the United States in April, only four months after being deported, are circumstances of the offense that support the special condition and the maximum term.  Also, his (acknowledged) membership in a violent street gang is a character of the defendant that also supports the condition and the maximum term.

The above special condition is authorized pursuant to 18 U.S.C. § 3563(b)(22).  See also 18 U.S.C. § 3563(a)(2), (b)(13) (generally requiring, as a mandatory condition of probation, at least one of the otherwise discretionary conditions listed in § 3562(b)(2), (b)(3), or (b)(13), with (b)(13) being a condition

---

[1] If the defendant were to return again to the United States following deportation, he would be subject to prosecution again under 8 U.S.C. § 1326, but would face a maximum prison term of 10 years.  See 8 U.S.C. § 1326(b)(1).  He could also be sentenced to up to two years in prison in this case, if the return constituted a violation of his probation.

5

that the defendant "reside in . . . or refrain from residing in a specified place or area").[2]

                      Respectfully submitted,

                      JEFFREY A. TAYLOR
                      UNITED STATES ATTORNEY

      by:  _____
           Michael C. Liebman
           Assistant United States Attorney
           D.C. Bar No. 479562
           555 Fourth Street, N.W., room 4231
           Washington, D.C.  20530
           353-2385
           michael.liebman@usdoj.gov

---

[2] In the event the Court elects to impose a prison term, including a prison term equal to time served, the above probationary condition can be imposed as a condition of supervised release.  See 18 U.S.C. § 3583(d).  Moreover, 18 U.S.C. § 3583(d) authorizes the Court to order, as a condition of the defendant's supervised release, that the defendant be deported and that he be delivered to a duly authorized immigration official for deportation.  Id.